UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DUANE ZIEMBA<br>Plaintiff | : | |
| v. | : | CIVIL ACTION NO.<br>3-98-cv-2344 (JCH) |
| JOHN ARMSTRONG, ET AL.<br>Defendants | : | |
| | : | MAY 16, 2006 |

**RULING REGARDING QUALIFIED IMMUNITY AND DEFENDANT MANGIAFICO'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND A NEW TRIAL [Doc. Nos. 370 & 384]**

## I. INTRODUCTION

The plaintiff, Duane Ziemba, is a former inmate who bought this section 1983 suit against several employees of the Connecticut Department of Corrections. Ziemba's claims concern an incident that occurred at the Department of Correction in August 1998, during which he was placed in four-point restraints, which held him face-down on a solid steel "bed," and restrained in that position for a period of 22 and one-half hours.

Following trial, a jury returned a verdict for Ziemba on his excessive force claim against defendant Mangiafico only. The jury found that Ziemba had "proven his section 1983 claim that Captain Mangiafico used excessive force, depriving Mr. Ziemba of his rights under the Eighth Amendment to the United States Constitution . . . by hitting Mr. Ziemba in the face, kneeling on him, or otherwise injuring or hurting him during the application of the four-point restraints." Verdict Form [Doc. No. 380].

In its ruling on Mangiafico's motion for summary judgment, this court declined to

grant Mangiafico qualified immunity as a matter of law because it found disputed issues of fact "concerning the reasonableness of Mangiafico's conduct and belief that the force he used during the application of the restraints on Ziemba was not excessive." The court must now consider whether Mangiafico is entitled to qualified immunity in light of the jury's verdict. See Stephenson v. Doe, 332 F.3d 68, 80-81 (2d Cir. 2003) (instructing district court, on remand, to charge the jury on Fourth Amendment excessive force, but not qualified immunity, to pose special interrogatories where necessary, and to make a legal ruling on the issue of qualified immunity on the basis of the jury's findings). Also pending are Mangiafico's motions for judgment as a matter of law [Doc. Nos. 370, 384] and a new trial [Doc. No. 384].

## II. QUALIFIED IMMUNITY

The qualified immunity inquiry requires the court to ask, first, whether the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 200 (2001). The jury's verdict of section 1983 liability for Eighth Amendment excessive force establishes such a violation. Next, the court asks whether the right violated was "clearly established." Id. at 201. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. "To be clearly established, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Anderson v. Recore, ___ F.3d. ____, 2006 WL 1192896, at *9 (2d Cir. May 4, 2006) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "Stated differently, '[a] right is clearly established if 'in light of preexisting law the unlawfulness [of the action taken is] apparent.' ' " Id. (quoting Smith v. Coughlin, 938 F.2d 19, 20 (2d Cir.1991)

(per curiam) (quoting Anderson, 483 U.S. at 640 (second alteration in original))).

As was clear from the jury instructions, the jury's verdict indicates that it found (1) that Mangiafico's conduct in "hitting Mr. Ziemba in the face, kneeling on him, or otherwise injuring or hurting him during the application of the four-point restraints," Verdict Form [Doc. No. 380], was objectively serious or harmful, and (2) that Mangiafico applied the aforementioned force "maliciously or sadistically to cause harm." Jury Charge §XX.A at 32 [Doc. No. 381]. Applying such force maliciously or sadistically to cause harm violates a clearly established constitutional right. See Lopez v. Smiley, No. 3:02CV1020(RNC), 2003 WL 22217109 (Sept. 22, 2003) ("In September 2001, it was clearly established that using force maliciously or sadistically for the purpose of causing harm violates the Eighth Amendment.") (citing Hudson v. McMillian, 503 U.S. 1, 8-9 (1992); Blyden v. Mancusi, 186 F.3d 252, 263 (2d Cir.1999)); see also Johnson v. Testman, 380 F.3d 691, 698 & n.6 (2d Cir. 2004) (adopting reasoning of district court that corrections officer would be found to have violated a clearly established right if he is found to have handcuffed prisoner to his cell for seven hours "for the sole reason to inflict wanton, gratuitous, cruel pain on him"); Atkins v. County of Orange, 372 F.Supp.2d 377, 401-02 (S.D.N.Y. 2005) (holding that disputed issue of fact as to whether corrections officers purposefully slammed prisoner into the walls while escorting him, or whether the officers merely slipped and accidentally caused prisoner to bump into walls, precluded granting qualified immunity at the summary judgment stage). The court therefore finds that Mangiafico is not entitled to qualified immunity.

## III. MOTION FOR JUDGMENT AS A MATTER OF LAW

### A. Standard of Review

Rule 50(b) of the Federal Rules of Civil Procedure allows for the entry of judgment as a matter of law if a jury returns a verdict for which there is no legally sufficient evidentiary basis. See Fed. R. Civ. P. 50. The standard under Rule 50 is the same as that for summary judgment: A court may not grant a Rule 50 motion unless "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." This Is Me, Inc. v. Taylor, 157 F.3d 139, 142 (2d Cir. 1998) (citation and internal quotation marks omitted). Thus, in deciding such a motion, "the court must give deference to all credibility determinations and reasonable inferences of the jury . . . and it may not itself weigh the credibility of the witnesses or consider the weight of the evidence." Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998) (citations omitted). In short, the court cannot "substitute its judgment for that of the jury." LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 429 (2d Cir. 1995) (citations omitted). Rather, judgment as a matter of law may only be granted if:

> (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or
>
> (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it.

Galdieri-Ambrosini, 136 F.3d at 289 (quoting Cruz v. Local Union No. 3 of the Int'l Bhd.

of Elec. Workers, 34 F.3d 1148, 1154 (2d Cir. 1994)) (internal quotation marks omitted); see also Luciano v. Olsten Corp., 110 F.3d 210, 214 (2d Cir. 1997).

Moreover, "weakness of the evidence does not justify judgment as a matter of law; as in the case of a grant of summary judgment, the evidence must be such that 'a reasonable juror would have been compelled to accept the view of the moving party.'" This Is Me, Inc., 157 F.3d at 142 (quoting Piesco v. Koch, 12 F.3d 332, 343 (2d Cir. 1993)). The court "must view the evidence in the light most favorable to the party in whose favor the verdict was rendered, giving that party the benefit of all reasonable inferences that the jury might have drawn in his favor." Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir. 1998) (citation omitted); see also Mickle v. Morin, 297 F.3d 114, 120 (2d Cir. 2002) (court must draw all reasonable inferences in favor of the non-moving party). Additionally, in making its determination, the court "'must disregard all evidence favorable to the moving party that the jury is not required to believe.'" Mickle, 297 F.3d at 120 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000)). Thus, "[a] party seeking to overturn a verdict based on the sufficiency of the evidence bears a very heavy burden." Norton, 145 F.3d at 118.

## B. Discussion

### 1. Qualified Immunity Argument

For the reasons stated in Part II, supra, the court finds that Mangiafico is not entitled to qualified immunity. It therefore declines to grant Mangiafico's motion for judgment as a matter of law on the ground of qualified immunity.

### 2. Sufficiency of the Evidence

Mangiafico argues that the evidence was insufficient to support the jury's verdict because it did not show that Mangiafico's application of force to Ziemba was done maliciously and sadistically to cause harm to Ziemba. However, the evidence presented at trial, including but not limited to Ziemba's testimony and the prison video tape of the application of the restraints to Ziemba, which video tape evidenced the force applied by Mangiafico to Ziemba, was more than sufficient to support the jury's finding that Mangiafico acted with the state of mind required for an excessive force claim. The court therefore denies Mangiafico's motion for judgment as a matter of law.

## IV. MOTION FOR A NEW TRIAL OR REMITTITUR

### A. Standard of Review

"The decision whether to grant a new trial following a jury trial under Rule 59 is 'committed to the sound discretion of the trial judge.'" Stoma v. Miller Marine Svcs., Inc., 271 F.Supp.2d 429, 431 (E.D.N.Y. 2003) (quoting Metromedia Co. v. Fugazy, 983 F.2d 350, 363 (2d Cir. 1992). A new trial "'should be granted when, in the opinion of the district court, the jury reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.'" DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 133 (2d Cir. 1998) (quoting Song v. Ives Labs., Inc., 957 F.2d 1041, 1047 (2d Cir. 1992)). "A new trial may be granted, therefore, when the jury's verdict is against the weight of the evidence." Id.

> This standard differs from the Rule 50 standard in two significant ways: Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict. Moreover, a trial judge is free to weigh the evidence [herself], and need not view it in

the light most favorable to the verdict winner.

Id. at 134 (citation omitted). However, "a court should rarely disturb a jury's evaluation of a witness's credibility." Id. "Where the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." Metromedia Co. v. Fugazy, 983 F.2d 350, 363 (2d Cir. 1992) (internal citations omitted). In addition, "[i]t is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" Sequa v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998) (internal citation omitted).

In his motion for a new trial or remittitur pursuant to Rule 59, Mangiafico argues that the damages awarded against him were excessive. "It is well-settled that the calculation of damages is the province of the jury." Blissett v. Coughlin, 66 F.3d 531, 536 (2d Cir. 1995). "Although a jury has wide discretion, a district court may refuse to uphold a punitive damage award when the amount is so high as to shock the judicial conscience and constitute a denial of justice." Lee v. Edwards, 101 F.3d 805, 808 (2d Cir. 1996). The same rule applies to compensatory damages. See, e.g., DiSorbo v. Hoy, 343 F.3d 172, 183 (2d Cir. 2003). "If a district court finds that a verdict is excessive, it may order a new trial, a new trial limited to damages, or, under the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount." Lee, 101 F.3d at 808.

### B. Discussion

#### 1. Compensatory Damages Award

The jury awarded Ziemba $100,000 in compensatory damages. In order to determine whether this award was so high as to "shock the judicial conscience and constitute a denial of justice," the court first considers the evidence presented at trial. The jury heard testimony that Mangiafico punched Ziemba's face and pressed it down onto the solid steel "bed" while Ziemba was restrained and not resisting, and saw a video consistent with this testimony. The jury also heard testimony from which they reasonably could have concluded that Mangiafico inflicted pain upon Ziemba by digging his knee into Ziemba's back and using a nerve compression technique that involved digging his thumb into Ziemba's head just behind his ear. Although the jury did not have to find every one of these occurred to render its verdict against Mangiafico, the ground on which the jury found Mangiafico liable, see Part II, supra, would be consistent with a finding that any or all of the uses of force described above – and the resulting physical and emotional injuries – occurred.

The video of the incident showed that Ziemba was screaming in response to Mangiafico's actions. Ziemba also testified in court to suffering pain from Mangiafico's actions. He testified that the punch "was devastating because my face was already against the solid surface and there was no give to it at all," Excerpt of Trial Tr.: Ziemba (3/1/06) at 41 [Doc. No. 386], that having Mangiafico's weight on his back caused his ankles to dig into the sharp metal ridge, and that the nerve compression technique "inflicted excruciating pain" that nearly caused him to black out, id. at 42. Although

Ziemba did not present evidence of any permanent physical effects of the attack, there was credible evidence that Ziemba had a red abrasion beneath his left eye following this attack. Ziemba also testified that he was still suffering from back pain and wrist pain five days after the attack. See id. at 123-24.[1]

Moreover, although Ziemba did not present direct evidence as to any long-term psychological effects caused by Mangiafico's attack, the evidence about the attack itself – particularly the facts that the attack occurred while Ziemba was fully restrained and unable to defend himself and that the attacker was the captain in charge of the unit in which Ziemba was housed – would support an inference that it caused psychological injuries. See, e.g., DiSorbo v. Hoy, 343 F.3d 172,184 (2d Cir. 2003) ("While handcuffed and defenseless, Rebecca DiSorbo was brutally attacked by a law enforcement officer who was substantially larger and stronger than she. In light of the highly traumatic nature of this attack, it would have been quite reasonable for the jury to find resulting psychological injuries."); id. at 185 (citing Ismail v. Cohen, 899 F.2d 183, 186-87 ("reinstating compensatory damages award based on inter alia the plaintiff's mental distress, even though the plaintiff did not offer testimony concerning counseling for his mental anguish") (parenthetical from DiSorbo)).

The court "may consider damages awards in similar cases in assessing the propriety of the amount of damages awarded" in the present case. Blissett, 66 F.3d at

---

[1]The jury may reasonably have inferred that this pain was caused by Mangiafico's action in pressing his knee into Ziemba's back while Ziemba's hands were cuffed tightly behind his back, even if the pain may have been exacerbated by the length of time Ziemba was left in the restraints or the lack of medical attention he received.

536 (internal citation omitted). However, "[w]hen considering whether a compensatory damages award falls within a reasonable range, we do not balance the number of high and low awards and reject the verdict in the instant case if the number of lower awards is greater." DiSorbo v. Hoy, 343 F.3d 172, 183, 185 (2d Cir. 2003) (internal citation and quotation marks omitted).

Mangiafico cites a number of cases from other district courts that involved awards of significantly less than $100,000, even though, Mangiafico argues, plaintiffs suffered similar or more severe injuries than Ziemba. See Jackson v. Austin, 241 F.Supp.2d 1313 (D.Kan. 2003) (awarding $15,000 in compensatory damages where corrections officer knocked plaintiff inmate to the floor, folded inmate's previously injured leg over his other leg, leaned his weight on it, and then applied handcuffs that were excessively tight, leaving inmate with a contusion on one cheek, swelling in his knee, and extreme pain in his knee, wrists and shoulders); Morrison v. Davis, 88 F.Supp.2d 799 (S.D.Ohio 2000) (discussing award of $12,000 in compensatory damages where prisoner was beaten by a corrections officer); Evans v. Hennessy, 934 F.Supp. 127 (D.Del. 1996) (awarding $75,000 in compensatory damages where corrections officer hit inmate twice on his face, causing inmate to trip over his personal belongings and reaggravate a pre-existing back injury); Hynes v. LaBoy, 887 F.Supp. 618, 626-27 (S.D.N.Y. 1995) (upholding jury award of $1,250 of compensation for inmate who suffered two cuts and a black eye); Davis v. Moss, 841 F.Supp. 1193 (M.D.Ga. 1994) (awarding $10,000 for pain and suffering only, where corrections officer shoved handcuffed inmate down a fire escape); Musgrove v. Broglin, 651 F.Supp. 769 (N.D.Ind. 1986) (awarding $12,000 in compensatory damages against a

deliberately indifferent supervising corrections officer, for injury, pain, and suffering caused by attack in which another corrections officer overturned inmate's bed, knocking him onto the floor in such manner that his knees and elbows struck the tile floor); Williams v. Omodt, 640 F.Supp. 120 (D.Minn. 1986) (awarding compensatory damages of $5,000 where corrections officer hit and choked handcuffed inmate, causing bruising, contusions, swelling, and pain, but no permanent physical injury); Thompson v. Jones, 619 F. Supp. 745 (N.D.Ill. 1985) (awarding $25,000 compensation for hearing loss and other injuries, pain, and suffering caused by corrections officers' conduct in dragging inmate by his handcuffs up and down several flights of stairs; pushing, hitting, punching, kicking, and choking him, and banging his head against a metal cart). Even if the court accepts Mangiafico's characterization of the facts of these cases as correct, however, several other cases persuade the court that the award is not so high as to " shock the judicial conscience and constitute a denial of justice."

In DiSorbo, 343 F.3d at 183-86, the plaintiff was attacked by a law enforcement officer while handcuffed.[2] She suffered more physical injuries than Ziemba, including near-strangulation, bruises on various parts of her head, shoulder, hands, elbow, and spine, and two hematomas on her head, but no permanent injuries, nor injuries requiring surgery. The court held that the "traumatic nature of the attack" permitted the jury to include psychological injuries in the compensatory damages award. Id. at 185.

---

[2]Although DiSorbo involved a claim against law enforcement officials rather than prison officials, the court compares the damages awarded therein because the cases involved similar physical and emotional injuries. See, e.g. DiSorbo, 343 F.3d at 184 (comparing DiSorbo's jury award with compensatory damage award in an Eighth Amendment excessive force case).

Indeed, it permitted an award that was higher than that in another police brutality case, in which the plaintiff suffered permanent injury, but a less traumatic attack. See id. at 183-86 (citing Hygh v. Jacobs, 961 F.2d 359 (2d Cir. 1992) (affirming $216,000 compensatory damages award)). The Second Circuit held that $250,000 would be the maximum compensatory damages awarded to DiSorbo. Thus, although DiSorbo's injuries were somewhat greater than Ziemba's injuries, the Second Circuit permitted a compensatory damages award two-and-one-half times as high as that awarded to Ziemba.

In Davis v. Rennie, 264 F.3d 86 (1st Cir. 2001), an incident occurred at a state mental hospital while staff members were attempting to put the plaintiff patient in four-point restraints. The defendant mental health worker twisted the plaintiff's neck and punched him four to five times, all in a very short period of time. The plaintiff suffered cuts and bruises but did not require hospitalization or incur permanent physical injury, although he did present evidence of post-traumatic stress disorder. The jury awarded $100,000 in compensatory damages.

Viewing the evidence presented in the present case alongside DiSorbo and Davis, the compensatory damages award against Mangiafico was not "so high as to shock the judicial conscience and constitute a denial of justice."

Mangiafico also argues that the award of compensatory damages was excessive because the plaintiff's attorney, in his closing statement, "made reference to the jury sending a strong and clear message to the Department of Corrections." To the extent that such comment may have improperly suggested to the jury that it consider its outrage at the Department of Corrections, a non-party, in arriving at a verdict, the court

issued a curative instruction that addressed this concern. To the extent this comment may have suggested that the jury could use damages to "send a message" in general, the court finds that its jury instructions on damages correctly informed the jury that it could consider its indignation at a defendant's conduct only in the context of setting a punitive damage award, and that neither the compensatory nor the punitive damage award should be influenced by sympathy, bias, or prejudice. See Jury Charge at §§ XXV, XXVIII.

**2. Punitive Damages Award**

The jury awarded $150,000 in punitive damages against Mangiafico.

> The Supreme Court in [BMW of North America v. ]Gore identified three "guideposts" for determining whether a punitive damages award is excessive: 1) the degree of reprehensibility; 2) the disparity between the harm or potential harm and the punitive damages award; and 3) the difference between the remedy and the civil penalties authorized or imposed in comparable cases.

DiSorbo, 343 F.3d at 186 (citing BMW of North America v. Gore, 517 U.S. 559, 574-75 (1996)).

"Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." Id. (quoting Gore, 517 U.S. at 475). To assess the degree of reprehensibility, the court must consider three "aggravating factors": "1) whether a defendant's conduct was violent or presented a threat of violence; 2) whether a defendant acted with malice as opposed to mere negligence; and 3) whether a defendant has engaged in repeated instances of misconduct." Id. The jury's verdict on liability shows that the first two aggravating factors were present in this case. The evidence supporting the first two

factors, even without the third, is sufficient to establish a high degree of reprehensibility. Particularly in light of the evidence that Mangiafico applied force to Ziemba when Ziemba was already restrained and not resisting, and the evidence that Ziemba had not attempted to injure any of the corrections officers, the jury had reason to find Mangiafico's conduct reprehensible.

Next, the court considers the relationship between the harm or potential harm and the punitive damages award. Although the Supreme Court has "decline[d] . . . to impose a bright-line ratio which a punitive damages award cannot exceed," State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003), it has "referenced a long legislative history, dating back over 700 years and going forward to today, providing for sanctions of double, treble, or quadruple damages to deter and punish." Id., 538 U.S. at 425 (citing Gore, 517 U.S. at 581 and n. 33). The punitive damages that the jury awarded against Mangiafico are one and one-half times the compensatory damages award. This is not an excessive disparity.

The third Gore guidepost "compares the punitive damages awarded with the civil and criminal penalties for comparable misconduct." Disorbo, 343 F.3d at 187 (citing Gore, 517 U.S. at 583). This consideration reflects the principle that, "if the penalties for comparable misconduct are much less than a punitive damages award, the tortfeasor lacked fair notice that the wrongful conduct could entail a sizable punitive damages award." Id. Mangiafico points out that the penalty for Assault in the Third Degree, which is a Class A misdemeanor pursuant to Conn.Gen.Stat. § 53a-61, a maximum of one year of imprisonment and/or a fine of $2,000. While this monetary fine is much lower than the punitive damages awarded against Mangiafico, one year of

imprisonment may well be equivalent to a financial loss of $150,000. Even if it is not, the criminal penalty for third degree assault "understate[s] the notice" under which Mangiafico operated in his interaction with Ziemba, because Mangiafico was trained as a corrections officer, and therefore had "notice as to the gravity of misconduct under color of his official authority, as well as notice that such misconduct could hinder his career." DiSorbo, 343 F.3d at 188 (quoting Lee v. Edwards, 101 F.3d 805, 811 (2d Cir. 1996)).

Nevertheless, viewing all of the Gore factors together, the court cannot say that the jury's verdict on punitive damages is so high as to "shock the judicial conscience and constitute a denial of justice." In contrast to Lee, in which the jury awarded $200,000 in punitive damages on a malicious prosecution claim,[3] the excessive force claim before this court involved violent and malicious acts against a fully restrained prisoner, which a jury found serious enough to warrant $100,000 in compensatory damages. Although the cases that Mangiafico cited in his argument on compensatory damages also involved lower punitive damages awards than that at issue here, this court's analysis of the Gore factors persuades it not to disturb the jury's verdict on punitive damages.

## V. CONCLUSION

For the foregoing reasons, the court finds, as a matter of law, that Mangiafico is not entitled to qualified immunity. Mangiafico's motions for judgment as a matter of law and for a new trial or remittitur [**Doc. Nos. 370 & 384**] are DENIED.

---

[3] Lee also involved state law assault and battery claims, but the $200,000 punitive damages award did not include those claims. 101 F.3d at 808.

**SO ORDERED.**

Dated this 16th day of May, 2006 at Bridgeport, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge